VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-073



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2026

| | |
|---|---|
| Deborah Tarrant\* v. Christopher Bartels and Amelia Bartels | APPEALED FROM:<br><br>Superior Court, Chittenden Unit,<br>Civil Division<br>CASE NO. 23-CV-04042<br>Trial Judge: Samuel Hoar, Jr. |

In the above-entitled cause, the Clerk will enter:

Plaintiff[1] appeals a civil division order granting summary judgment to defendants and declaring that defendants have title by adverse possession and constructive possession to a disputed strip of land between the parties' lakefront properties. On appeal, plaintiff argues that the trial court erred in granting summary judgment because plaintiff claims there were material disputes of fact regarding whether defendants' use of the property was sufficiently open, notorious, and continuous to establish adverse possession, and whether the requirements were met for constructive possession of the entire strip. We affirm.

In September 2023, plaintiff filed suit against defendants, her neighbors, seeking a declaration that she owned a disputed parcel of land and asking for damages for removal of trees

---

[1] This case was originally brought by plaintiff Richard Tarrant, who passed away during the litigation. This Court subsequently granted a motion to substitute Deborah Tarrant as the plaintiff based on the representation that she succeeded Mr. Tarrant as title owner of the property at issue. For consistency, we use she/her pronouns in this decision to refer to plaintiff even though some of the actions referred to were taken when Mr. Tarrant was still the named plaintiff.

from the property. Defendants moved for summary judgment, asserting that their predecessors, the Gennaris, obtained ownership of the property through adverse possession.[2]

In its summary judgment order, the court provided the following undisputed facts. Plaintiff owns lakeshore property that she acquired in 1968. Defendants' predecessor-in-interest, Mr. Gennari, bought property south of plaintiff's land in 1979 and in 1988 plaintiff purchased the vacant lots between the properties to act as a privacy buffer. The properties are bordered by a road to the east and Lake Champlain to the west. In 2019, Mr. Gennari sold the property to defendants, his daughter and son-in-law.

In 2023, plaintiff commissioned a survey, which depicted the parties' properties and the area between them. A strip of land, about 1/10th of an acre, was marked by iron pipes on the northern side. The survey concluded that the strip was part of plaintiff's property. Defendants have acted as though they own the strip. When he bought his land in 1979, Mr. Gennari found the iron pipes and assumed that they marked the northern boundary of his property. Defendants' driveway and turnaround area extended into the strip. Defendants used the strip for outdoor recreation, to hold parties, and to park a recreational vehicle. Defendants reseeded the area with grass and maintained rock stairs and a garden on it. Defendants' greywater field extended into the strip. Overall, defendants used the area continuously beginning at least in the early 1980s. Plaintiff did not know until 2003 that defendants' driveway extended onto property to which she held record title.

The trial court concluded that the undisputed evidence showed that defendants' predecessors had adversely possessed the disputed strip by openly using it without permission for several decades. The court rejected plaintiff's assertion that the possession was not sufficiently open and notorious, citing defendants' cutting of trees on the strip, maintaining it as a greywater field, using it as a driveway and turnaround, and maintaining rock stairs and a garden on it. The court concluded that the possession was hostile because although plaintiff gave permission to use the area in 2003, this was more than fifteen years after the open and notorious use began. Finally, the court held that defendants gained title to the entire disputed parcel under the doctrine of constructive possession because defendants were operating under color of title, and the land had a clear and definitive boundary marked by the iron pipes.[3] Plaintiff appeals.

On appeal from summary judgment, this Court applies the same standard as the trial court. Gallipo v. City of Rutland, 2005 VT 83, ¶ 13, 178 Vt. 244. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "Adverse possession is a mixed question of

---

[2] Most of the actions relevant to the adverse-possession analysis occurred before defendants purchased the property. In reciting the uses of the property, we use defendants to collectively refer to acts taken by them and their predecessors-in-interest.

[3] The summary-judgment decision did not resolve the parties' dispute regarding a sliver of land that extended beyond the disputed area. The court denied summary judgment as to the question and reserved the issue for trial. After the parties subsequently waived claims related to that portion of the property, the court entered final judgment.

law and fact." N.A.S. Holdings, Inc. v. Pafundi, 169 Vt. 437, 438 (1999). "To achieve title through adverse possession, a claimant must demonstrate that possession of the land was open, notorious, hostile and continuous throughout the statutory period of fifteen years." Id. at 440. To gain title through adverse possession, a claimant "has the burden of establishing all of these elements." Jarvis v. Gillespie, 155 Vt. 633, 638 (1991).

On appeal, plaintiff first argues that there were genuine issues of material fact about whether defendants' use of the disputed parcel was sufficiently open and notorious to establish adverse possession. Although plaintiff contends that open and notorious use is heavily fact-based and requires an evidentiary hearing, plaintiff has not clearly identified what facts regarding this issue are in dispute.

Plaintiff also asserts that defendants' uses of the land were not sufficiently extensive to put plaintiff on notice of the encroachment. The element of open and notorious use requires acts of possession that "are conducted in a manner which would put a person of ordinary prudence on notice of the claim." Id. at 641. In making her argument, plaintiff focuses not on the encroachments themselves, but on how this impacted plaintiff's overall use of her property. Plaintiff argues that defendants used a relatively small slice of plaintiff's land that was not readily visible from plaintiff's home or the road.[4] The undisputed evidence showed that defendants used the disputed area beginning in the early 1980s. Defendants regularly used the land as a driveway and turnaround, and parked cars and a recreational vehicle there. Defendants used the land for a wastewater system, played outdoor games there, and installed rock steps and an outdoor garden. Defendants also reseeded the lawn several times. While each individual act may not have amounted to open and notorious use, their combination was certainly enough to indicate that defendants were assuming ownership over the property. See Jarvis, 155 Vt. at 639 (explaining that even if individual acts do not suffice as open and notorious use, "each case must be examined individually, viewing the claimant's acts in light of the nature of the land"). Defendants' uses of the property were consistent with the actions of a title owner and sufficed as open and notorious use. Lysak v. Grull, 174 Vt. 523, 526 (2002) (mem.) (concluding that claimants' acts of mowing, removing snow, and installing fence, driveway, and garden amounted to open and notorious use).

Plaintiff also contends that there were genuine issues of material fact about whether defendants' use of the parcel was hostile and continuous. Below, plaintiff argued that he granted defendants' permission in 2003 to use the property as a turnaround, and therefore their use was not hostile. The trial court concluded that any permission in 2003 was irrelevant because defendants' predecessors had already occupied the land for fifteen years before 2003.

---

[4] Defendants contend that in response to their summary-judgment motion plaintiff did not argue that the disputed area was not visible from the road and therefore this argument was not properly preserved for appeal. Even if preserved, the argument lacks merit. The standard for open and notorious acts is not whether the landowner can see the uses from their home or the road; incursions are open and notorious if they put a person of ordinary prudence on notice of the claim. The undisputed facts here meet that standard.

3

On appeal, plaintiff makes a new argument concerning whether defendants' use was hostile. Plaintiff claims that Mr. Gennari purchased the property from the Brickman family, who at the time also owned what would later become the disputed parcel and had already established the leach field and driveway on part of that disputed area. Plaintiff therefore asserts that the only logical inference is that the Brickmans intended to give the Gennaris permissive use over the disputed parcel. They therefore contend that there are disputed facts as to both the hostile and continuous elements of adverse possession.

Plaintiff has not demonstrated how this argument was raised below and therefore properly preserved for appeal. In response to a motion for summary judgment, to create an issue of disputed fact, a nonmoving party must file a statement indicating which facts are disputed and providing citations to the record. See V.R.C.P. 56(c)(2) (explaining that nonmoving party asserting that fact is disputed must file paragraph-by-paragraph response with citations to record). Here, in support of their motion for summary judgment, defendants' statement of undisputed facts indicated that when Mr. Gennari purchased the land, he looked for boundary markers, found the iron pipes, and thought they marked the northern line of the property. He therefore treated the area up to the iron pipes as if it were part of his property. This statement was supported by references to the record, including Mr. Gennari's affidavit. In response, plaintiff alleged that when Mr. Gennari purchased the property, he did not have knowledge of the location of the northern border, and believed, but did not know that the iron pipes demarcated the property line. Plaintiff did not allege that there was a disputed fact over whether the Bartels granted Mr. Gennari permissive use of the disputed strip of land. Moreover, plaintiff's response to defendants' motion for summary judgment did not argue that the transfer from the Bartels to Mr. Gennari created an inference of a permissive use. Given that plaintiff did not properly present this argument to the trial court, it is not preserved for appeal. See Progressive Ins. Co. v. Brown ex rel. Brown, 2008 VT 103, ¶¶ 8-9, 184 Vt. 388 (providing that party must present issue "with specificity and clarity" to preserve it for appeal and holding issue not preserved where not raised in summary-judgment response (quotation omitted)). Plaintiff's argument regarding continuous use is linked to her unpreserved argument regarding permissive use and is therefore also not preserved.

Finally, plaintiff argues that there are genuine issues of material fact regarding whether defendants acquired portions of the disputed parcel by constructive possession. Constructive possession allows a claimant to gain possession of an entire plot of land by occupying part of it and may be achieved through two methods: "(1) when the claimant is operating under color of title and (2) when the land is marked by clear and definite boundaries." N.A.S. Holdings, Inc., 169 Vt. at 441. The trial court concluded that both methods applied here. The court pointed to the undisputed facts that the strip was clearly marked by the road on the east, the lake on the west, and the iron pipes on the north. The court also noted that defendants' predecessors-in-interest made use of the property under claim of title, believing that the iron pipes marked the northern boundary of their property.

On appeal, plaintiff contends that there was a disputed question of fact over whether the iron pipes amounted to a clear and definite boundary because plaintiff was not aware of the iron pipes. In their statement of undisputed facts, defendants asserted that the iron pipes were easily seen and were understood by their predecessors to be the northern boundary of the property. In response, plaintiff disputed whether the parcel was demarcated by clear boundaries, but did not

4

rebut the undisputed fact that when defendants' predecessor purchased the property, he found the iron pipes and believed those marked the northern boundary of the property. Therefore, even if there was a disputed factual question over whether the iron pipes were sufficiently clear and definite boundary markers, the undisputed facts demonstrate that defendants operated under color of title. By acting under color of title, defendants gained constructive possession to the entire strip of land.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice